UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-114-H

GRACE JANELL SWEAZY                                                              PLAINTIFF

V.

GREAT AMERICAN INSURANCE GROUP                                         DEFENDANT

**MEMORANDUM OPINION**

Grace Janell Sweazy ("Plaintiff") filed a claim for breach of contract and bad faith against Great American Insurance Company ("Defendant"). She is the beneficiary under her deceased husband's Occupational Death Policy (the "Policy") which Defendant issued. The dispute concerns whether she is entitled to receive the accidental death benefits under the Policy. Defendant moved for summary judgment on the grounds that, under the circumstances of this case, the Policy excludes her claim. For the reasons that follow, the Court agrees that the Policy does not provide accidental death benefits in these circumstances.

I.

Wilbur C. Sweazy (the "Insured") was a tractor trailer truck driver for T&T Dedicated Carriers ("T&T"), his employer. In 2001, he enrolled in the Policy, which Defendant offered to employees of T&T. The Policy provided accidental death benefits of $250,000 in the instance that the Insured's death was caused by an Occupational Accident. Plaintiff was the designated beneficiary of the Policy.

On December 2, 2006, while traveling westbound on the Bluegrass Parkway in Anderson

County, Kentucky, the Insured crashed his tractor after a front steering tire blew out. The trailer ran off the right shoulder of the road, struck a guard rail, traveled a short distance and came to rest after striking an embankment. The Insured exited his truck, walked approximately 50 feet to the median guardrail, and had a brief conversation with a motorist who had arrived at the scene of the accident. The Insured then attempted to make a phone call, and while dialing the number, he fell face first to the ground. He was later pronounce dead on the scene by the Anderson County Deputy coroner. Although the Insured suffered no visible physical injuries, according to Plaintiff's expert, Dr. Nichols, the accident triggered "a sudden cardiac event that resulted in a fatal cardiac rhythm disturbance."

The record reflects the Insured's extensive medical record of preexisting heart disease. In 2003, physicians at the Louisville VA Medical Center diagnosed the Insured with an enlarged heart. According to a progress report from the VA Medical Center, by November 2004, he suffered from hypertensive heart disease. On July 1, 2005, the Insured was treated at the University of Louisville Hospital for a number of issues, including Chronic Obstructive Pulmonary Disease (COPD). Another progress report issued by the VA Hospital on July 4, 2006 stated that the Insured's COPD had worsened. Although Dr. Nichols acknowledged that the crash triggered the Insured's death, his official report listed heart disease as the cause of death. The Coroner's Investigation Report attributed the cause of death to "Atherosclerotic and Hypertensive Cardiovascular Disease" as well as "extreme obesity." The Associate Chief Medical Examiner's Final Report attributed the cause of death to "Atherosclerotic Cardiovascular Disease."

Plaintiff filed this complaint, alleging that the Insured died as the result of an

Occupational Accident, and that as the beneficiary of the Policy, she should have received those benefits. Plaintiff also claims that Defendant failed to act in good faith in accordance with Kentucky's Unfair Claims Settlement Practices Act ("Act") when it refused to pay.

II.

Summary Judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56©*. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d, 357, 361 (6th Cir. 2001).

The interpretation and construction of an insurance contract is a matter of law for the courts. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries*, 82 S.W.3d 869, 871 (Ky. 2002) . Kentucky law mandates that the court construe clear and unambiguous terms in a contract according to their "plain and ordinary meaning," *Id.*, and that all uncertainties and ambiguities be resolved in favor of the insured. *James Graham Brown Foundation v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991).

III.

The Policy provides a benefit where an insured dies by way of Occupational Accident. No one disputes that the crash was occupational.[1] The remainder of the analysis is less straightforward. The Policy defines an accident as a "sudden, abrupt, discrete, and unexpected

---

[1] The policy states, "Occupational means...that the activity, accident, incident, circumstance or condition is proximately caused by the Insured's performing services within the course and scope of contractual obligations for the [employer]."

3

event resulting in physical injury, and that takes place without expectation and abruptly, rather than something which continues, progresses, or develops." The Policy goes on to define an injury as a "physical injury...caused by an Occupational Accident...which results directly and independently of all other causes in [the Insured's death]." The parties dispute whether the Insured's death resulted from an accident as defined in the Policy. For two reasons, the Court finds that the Policy does not provide coverage.

A.

First, the circumstances here do not constitute an accident as defined in the Policy. True, the Insured was involved in an "accident" as one normally uses the term. However, the Policy definition is somewhat different. Dr. Nichols testified that an outpouring of physiologic hormones, adrenaline and noradrenaline, led to the heart attack. The outpouring of hormones and adrenaline is not a "physical injury" as contemplated under the Policy.

Plaintiff argues that the accident did directly and independently cause an injury - the outpouring of hormones and adrenaline. However, the Policy does not say that the accident must result directly and independently in the Insured's injury. Rather, the injury must result directly and independently in the Insured's death. Dr. Nichols testified that the injury did not result directly and independently in the Insured's death. He said that the outpouring of hormones and adrenaline caused the preexisting heart disease to "decompensate," or to became critical and fatal. At best, a combination of the injury and the Insured's preexisting heart disease led to his death. Therefore, even if the Insured can be said to have received a "physical injury," it did not result "directly and independently" in the Insured's death.

The Policy language is clear and unambiguous in defining an accident. The evidence is

4

undisputed that the circumstances here do not constitute an accident as defined in the Policy.

B.

Second, the Policy contains a disease exclusion that applies here. Under Kentucky law, disease exclusions similar to the exclusion contained in the Policy mandate that the accident be the sole cause of an insured's death. *Sachs v. Independence Ins. Co.*, 208 S.W.2d 61, 64 (Ky. 1948). The Policy specifically states that it does not cover any "Injury, Accident, expense, or loss caused in whole or in part by, or resulting in whole or in part from...sickness, disease or infection or any kind." In a similar case, the court in *Honican* said that

> Kentucky courts have consistently interpreted such contractual language found in other accidental death insurance policies as requiring plaintiffs to show that the claimed accident was the sole cause of the insured's death...'[t]he rule is well established that the insurance company is not liable under this type of insurance coverage where the death of the insured is due to his diseased condition or *where death is due both to the accident and the disease*.' *Honican*, 455 F. Supp. 2d at 666-667 (citing *Commonwealth Life Ins. Co. v. Byck*, 268 S.W.2d 922, 925 (emphasis supplied)).

In *Honican,* the insured's hip surgery, performed because of an accidental fall, triggered preexisting conditions that caused the insured's death. The court said, "the triggering accident must be more than a contributing factor, it must be the sole cause [of the insured's death], at least to the extent the death is 'independent' of existing health conditions." *Id*. at 666.

In light of the role that Insured's heart disease played in his death, the Policy's disease exclusion prohibits Plaintiff from receiving death benefits. It is beyond dispute that the Insured's death was caused, at least in part, by his preexisting heart disease. Dr. Nichols' report says that the cause of Insured's death was heart disease and reiterated that the Insured would not have died as a result of the crash but for his preexisting heart disease. Much like the accidental

5

fall in *Honican*, the crash in this case was a trigger that was merely a contributing factor in the Insured's death.

Consequently, the evidence establishes beyond question that the Policy disease exclusion applies and Plaintiff is not entitled to the accidental death benefits.

IV.

Given the determination of the court that the disease exclusion applies, it is impossible for Plaintiff to establish that Great American acted in bad faith when it refused to pay benefits. Kentucky uses a three-prong test in determining the merits of a bad faith claim. The test requires a showing that: 1) the policy terms obligate the insurer to pay the claim; 2) the insurer's denial lacks a reasonable basis in law or fact; and 3) the insurer knowingly or recklessly acted without a reasonable basis for denying the claim. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006). Plaintiff fails to meet the first-prong of the test.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record